**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Richmond Division**

**AUDREY MICHAEL,**
            **Plaintiff,**

**v.**                                                   **Civil Action No. 3:18-cv-00125**

**VIRGINIA COMMONWEALTH UNIVERSITY,**
            **Defendant.**

**MEMORANDUM OF LAW**
**IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS**

Defendant, the Board of Visitors of Virginia Commonwealth University,[1] by the Attorney

General of Virginia, submits the following Memorandum of Law in support of its Motion to

Dismiss the Complaint filed by the plaintiff, Audrey Michael ("Michael" or "Plaintiff").

## I.        INTRODUCTION

Michael is an African-American female.  She was employed by VCU until her voluntary

resignation on November 11, 2015.  Subsequent to her resignation, Michael filed an eleven count

Complaint.  In Count 1 Michael alleges that VCU engaged in disparate treatment/racial

discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, et seq.

("Title VII").  In Count 2, she contends that VCU created a hostile work environment also in

violation of Title VII.  In Counts 3, 4, and 5, Plaintiff states that VCU unlawfully retaliated against

her in violation of Title VII.  In Counts 6-10, Plaintiff reasserts each of these allegations as

violations of the Virginia Human Rights Act ("VHRA").  In Count 11, Plaintiff contends that VCU

violated the Age Discrimination in Employment Act (the "ADEA").  For the reasons set forth

---

[1] Plaintiff has named Virginia Commonwealth University.  The actual entity is "The Board of Visitors of Virginia Commonwealth University."  *See* Virginia Code §23.1-2300.  The entity conducts business as Virginia Commonwealth University ("Defendant" or "VCU").

below, Counts 1-5 fail to state a cause of action for which this Court may grant relief under Fed. R. Civ. P. 12(b)(6).  Counts 6-11 in Plaintiff's Complaint lack subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1).  Therefore, the Complaint should be dismissed with prejudice.

## II.      SUMMARY OF ALLEGATIONS[2]

### Background

1.      Michael is a 51-year old African-American woman who was hired by her supervisor, Jaqueline Kniska ("Kniska"), as a Senior Compliance and Policy Analyst in March, 2013 in the Office of Audit and Compliance Services. (Compl. ¶¶ 7-8).

2.      During her two and one-half year tenure, Michael worked through two performance review cycles. Both of her performance evaluations highlighted issues with her overall performance.  At the end of her the first cycle, Michael requested, and was provided the opportunity, to work with her supervisor to re-categorize her job duties and the percentages each category would carry.  (Compl., Ex. 2 - Page 6).

3.      At that time, Kniska determined that - based on Michael's skill level, demonstrated abilities to date, and needed focus on a one time major project (serving as the project manager in getting a new policy website to go live by working with hired vendors) - her workload expectation for supporting the Integrity and Compliance Office ("ICO") initiatives would be significantly reduced and her position would focus on the Policy Program for this cycle. (Compl., Ex. 2 - Page 6).

---

[2] For the purposes of this Motion to Dismiss, the facts alleged by the plaintiff are assumed to be true. Defendant reserves the right to dispute any factual allegation in the Complaint.

4.      Even with VCU's agreement to Michael's request for a workload reduction and reallocation of weighted expectations, Michael struggled.  As a result, she agreed to a detailed performance improvement plan. (Compl., Ex. 2 - Page 6).

5.      Throughout this performance cycle, Michael benefited from VCU's willingness to reconfigure her job duties; continue extensive one-on-one onboarding with her supervisor; pay for memberships in professional associations; and allow attendance at national training conferences. (Compl., Ex. 2 - Page 6).  Despite these efforts, Kniska, the Executive Director (William Cole), Michael's teammates, and external constituents all communicated deficiencies with Michael's performance. (Compl., Ex. 2 - Page 6).

6.      Michael's competency did not increase related to her duties as a senior compliance professional.  Overall, she lacked comprehension of her responsibilities and accountability for her work.  She required repeated reminders and follow-up to ensure full execution of tasks.  She also required assistance with core competencies related to her responsibilities, and did not demonstrate the needed improvement in most areas. (Compl., Ex. 2 - Page 6).

7.      A performance review was slated for 4-6 months in the future. As the 6 month review approached, Kniska provided Michael an additional two months in order for her to have enough time to demonstrate areas of improvement.  (Compl., Ex. 2 - Page 6).

**<u>Allegations of Racial Comments</u>**

8.      During Michael's second performance review cycle, she complained that Kniska made three racial comments in a single meeting on July 14, 2015.  (Compl. ¶ 10).  Specifically, Michael alleges that Kniska made the following comments:

    a.      Kniska referred to the name of Dr. Quincy Byrdsong, an African-American woman (sic), as "So Ghetto;"

    b.      Kniska asked who was responsible for "hiring these people" in reference to Deloris Hill (sic) and Debbie Bell, both African-American women;

    c.      Kniska complained that Dr. Wanda Mitchell, an African-American woman, was "going around campus stating there are not enough black employees here at VCU… What if I went around saying there isn't (sic) enough women here…"

**Allegations of Complaints and Retaliation**

9.      On July 15, 2015, Michael allegedly spoke to the University ombudsman, William King, concerning Kniska's comments. (Compl. ¶ 11).

10.     On July 22, 2015, Michael complained to Bill Coleman (sic), the Director of Audit and Compliance Services, concerning Kniska's alleged comments. (Compl. ¶ 12).

11.     Michael alleges that, immediately after she complained, Kniska (i) assigned her an excessive number of tasks (Compl. ¶ 13); (ii) began finding fault with all of her work (Compl. ¶ 14); and (iii) "began community (sic) with her almost solely via email" (Compl. ¶ 15). In comparison, Michael states that Kniska "did not communicate with Caucasian employees almost solely via email." (Compl. ¶ 16).

12.     Michael also contends that Kniska denied her the opportunity to attend a conference at Cornell University. (Compl. ¶ 17). However, the compliance seminar at issue did not match her position and "was three times the allotted budget for staff positions." (Compl., Ex. 2 - Page 3, ¶ 4). In comparison, Michael contends that she is not aware of any Caucasian employees who were denied the opportunity to attend conferences in general. Notably, Michael does not allege that other Caucasians were allowed to attend the conference at issue. Moreover, Michael attended other seminars, including, national training conferences each year during her employment. (Compl., Ex. 2 - Page 3, ¶ 4).

13.     On October 13, 2015, Michael requested annual leave for the following day, but alleges that Kniska ignored her request without justification. (Compl. ¶¶ 18-19). Michael alleges

no facts confirming that Kniska actually received her request that day or supporting her conclusion that Kniska simply "ignored" her request.  Notably, Michael does not allege that Kniska refused to approve the request, or that Michael was not allowed to take her requested leave on October 14, 2015.[3]

14.     On October 21, 2015, Michael received her second annual review from Kniska. Michael alleges that this review included misstatements and untrue statements concerning her performance.  (Compl. ¶¶ 20-22 and Ex. 2).  Beyond this bald allegation, Michael does not identify a single statement in the evaluation that she contends is untrue.

15.     In contrast, the detailed, seven-page evaluation contains numerous examples of performance issues that Michael has not denied.  Specifically, the evaluation provides, in part, as follows:

        a.      <u>Regulatory Research and Compliance Skills - "Unsatisfactory Performer"</u> Michael "has focused little attention on this area of her position," despite being provided the skill development and training to perform her job functions.   "[S]ignificant improvement was needed in this area at the close of last cycle's evaluation and remains the case at the end of this cycle."  Kniska stated that "Ms. Michael has mentioned two policies needed for the university [transgender bathroom access and pregnancy and parenting policy for students) yet has failed to progress with a plan to demonstrate the need and to establish these policies. To date, Ms. Michael has not demonstrated the skill set or ability to draft policy."  Kniska states that Michael's "work performance has not adequately demonstrated the results of her research in policy development."  (Compl., Ex. 2 - Page 1, ¶ 1).

---

[3] The omission of these allegations creates the perception for this Court that Michael was unlawfully denied leave.  Presumably, Michael knows that such allegations would be false and chose not to include them.

   b. <u>Education and Communication Skills - "Fair Performer"</u>

While noting that Michael executed a policy writing workshop, the evaluation recognized that there were several errors.  "Michael's rejection of accountability for this project was noted and does not align with expectations of a senior level compliance professional." (Compl., Ex. 2 - Page 1-2, ¶ 2).

   c. <u>Protocols, Documents and Database Management - "Fair Performer"</u>

In support, the evaluation discusses Michael's efforts to get the policy website published. However, Michael took no initiative "to address non responsive stakeholders nor did she apprise her supervisor of non-responsive or missing ownership or other details for maintenance of existing policies."  Also, the website had several deficiencies, and Kniska determined that "the remedial nature of this project is not expected and should not be necessary given the point of maturity in this position and for the role of a senior compliance professional."  The issues were not resolved in a timely manner and several issues remained unaddressed.   This hindered Kniska's communications with external stakeholders, including the Board of Visitors.  Finally, Michael was asked to edit the policy on *Creating and Maintaining Policy and Procedures*.  "The resulting work product was deficient to the point of removing Michael from this responsibility and having her supervisor address this document moving forward. Attention to detail was the main cause of this deficiency; examples included: edits discussed and decided were not made; versions of the document were confused with prior versions; and overall accountability for mistakes was not accepted."  (Compl., Ex. 2 - Page 2, ¶ 3).

      d.     <u>Personal and Professional Development - "Unsatisfactory Performer"</u>

The evaluation noted that Michael failed to obtain her professional certification in ethics and compliance despite receiving an additional year to do so. (Compl., Ex. 2 - Page 3, ¶ 4).

      e.     <u>ICO Program Support/Special Projects – "Not Rated"</u>

Michael's work pace and inattention to detail prohibited Kniska from assigning her projects in this category.  (Compl., Ex. 2 - Page 3, ¶ 5).

      f.     <u>Ethical Standards - "Unsatisfactory Performer"</u>

"Lapses in judgment and integrity were demonstrated during the Human Resources Benefits Fair and when working on a group project for a website redesign wherein another's work was represented as [Michael's] own."  Further, Kniska noted that Michael "fails to accept responsibility or accountability for her actions and/or performance. Examples include claiming ignorance to plagiarism elements; expressing in a business document that August 2015 was the first she had heard of poor performance from her supervisor; repeated claiming that projects were timely completed; and submitting documents with incorrect dates after failing to meet a deadline."  (Compl., Ex. 2 - Page 4, ¶ 1).

      g.     "Michael was given a <u>performance improvement plan</u> at the beginning and at the midpoint of this performance cycle. However, there has been little to no improvement made over the last year." (Compl., Ex. 2 - Page 5) (emphasis added).  The fact that Michael was on a performance improvement plan demonstrates that she was experiencing significant performance issues prior to her complaints.

16.    Michael also alleges that Kniska penalized her for obtaining a certification within her first year of employment, and that Michael is not aware of any Caucasian penalized for obtaining any certifications. (Compl. ¶¶ 23-25).  Notably, Michael's evaluation states that she <u>did</u>

not receive her certification as alleged.  Rather, Michael was expected to obtain the certification by April 2014 (within 1 year of hire), as stated in the advertised posting for this position.  Michael requested and was provided additional time to complete her certification without penalty on her first evaluation.  However, she failed to do so.  Kniska noted that "this is inconsistent with other team members at and below her organizational chart level.  This deficiency has reduced her rating in this area this cycle."  (Compl., Ex. 2 - Page 3, ¶ 4).

17.     On October 21, 2015, Michael filed a grievance claiming her evaluation was retaliatory.  (Compl. ¶ 26).  She complained again to the Director of Audit and Compliance on October 26, 2015. (Compl. ¶ 27).

18.     On October 27, 2015, Michael resigned from VCU. (Compl. ¶ 28).  Michael's last work day was November 11, 2015. (Compl. ¶ 29).

19.     Subsequent to resigning, Michael contends that she was unlawfully denied health benefits through December 11, 2015. (Compl. ¶ 30-31).  Michael supplies no support for her contention that she was entitled to receive benefits through December 11, 2015.[4]  Further, Michael does not allege the actual date her health benefits ceased presumably because it was in compliance with the actual benefit plan.

20.     On December 13, 2015, Michael learned that her employment was listed as terminated instead of resigned. (Compl. ¶ 32).

21.     Finally, Michael alleges, without elaboration that VCU and Kniska terminated Debbie Bail (sic), a 50-year-old African American woman in July, 2015 and another 47-year-old

---

[4] Contrary to Plaintiff's assertion, the express terms of the Commonwealth's health benefit plan, provide, in part, that an employee's coverage ceases at the end of the month in which an employee terminates employment.  *See, CovaCare Member Handbook, page 118.* https://www11.anthem.com/shared/va/f3/s1/t0/pw_g282934.pdf?refer=ahpfooter&na=cova

African-American woman "because of a difference of opinion." (Compl. ¶ 33-35). Michael's sole basis for comparison is that three Caucasian women under the age 30 that worked under Kniska never received reprimands, poor evaluations or termination during the same period of time to the best of Michael's knowledge. (Compl. ¶ 36).

## III.     ARGUMENT

**A.     PLAINTIFF'S VIRGINIA HUMAN RIGHTS ACT CLAIMS (COUNTS 6-10) AND HER AGE DISCRIMINATION CLAIM (COUNT 11) MUST BE DISMISSED FOR LACK OF SUBJECT MATTER JURISDICTION UNDER FED. R. CIV. P. 12(B)(1)**

Fed. R. Civ. P. 12(b)(1) "permits a party to move to dismiss an action for lack of subject matter jurisdiction." *Allen v. Coll. of William & Mary*, 245 F. Supp. 2d 777, 782 (E.D. Va. 2003). "The burden of establishing the existence of subject matter jurisdiction rests upon the party which seeks to invoke the court's authority." *Id*. (internal citations omitted).

"For motions made pursuant to [Fed. R. Civ. P. 12(b)(1)], the evidentiary standard depends upon whether the challenge is a facial attack on the sufficiency of the pleadings, or an attack on the factual allegations that support jurisdiction." *Id*. at 782-83 (internal quotation omitted). Specifically, "[i]f the defendant is attacking the sufficiency of the complaint, the court must accept all of the complaint's factual allegations as true." *Id*. at 783 (internal citations omitted). By contrast, "if the defendant claims that the jurisdictional facts alleged in the complaint are untrue, the pleadings are regarded as mere evidence. … The court then weighs the pleadings and all of the other evidence to determine whether subject matter jurisdiction exists." *Id*. at 783 (internal citations omitted).

## 1.     This Court Lacks Jurisdiction Over the VHRA Claims (Counts 6-10).

The Virginia Human Rights Act ("VHRA") states that "[n]o employer employing more than five but less than 15 persons shall discharge any such employee on the basis of race ...." Va.

Code Ann. § 2.2-3903(B).   Therefore, the VHRA only creates a private cause of action against employers with more than five but fewer than fifteen employees.   This Court routinely dismisses VHRA claims when the Defendant does not meet this jurisdictional limitation.   *See Walton v. Sch. Bd. of Gloucester Cty.*, No. 4:06-cv-75, 2006 U.S. Dist. LEXIS 87477, at *15-16 (E.D. Va. Dec. 4, 2006) (dismissing VHRA claim where "it is clear" that the defendant employs at least fifteen people); *see also Wilson v. Shaw Constructors, Inc.*, No. 2:11-cv-28, 2012 U.S. Dist. LEXIS 174511 (W.D. Va. Dec. 10, 2012); *Reiterman v. Costco Wholesale Mgmt. # 238*, No. 5:05-cv-12, 2005 U.S. Dist. LEXIS 15219 (W.D. Va. July 28, 2005) (dismissing Plaintiff's claim under the VHRA because her employer had more than 15 employees). Plaintiff has not pled (and cannot meet) this basic jurisdictional requirement.   Indeed, her EEOC Charge alleges that VCU employs over 500 employees.   The Court may take judicial notice that VCU employs more than fifteen people, and dismiss the VHRA claims (Counts 6-10) for lack of jurisdiction.   *Richardson v. Prince William Cty.*, Civil Action No. 1:17-cv-00761, 2018 U.S. Dist. LEXIS 12387, at *5-6 (E.D. Va. Jan. 24, 2018) (this Court takes judicial notice that Defendant Prince William County employs more than fifteen employees).

Second, Michael acknowledges that she was not discharged. Instead, she admits that she voluntarily resigned.   On its face, the VHRA only applies if the employer discharged an employee who meets the statutory requirements. *See Cross v. Suffolk City Sch. Bd.*, No. 2:11-cv-88, 2011 U.S. Dist. LEXIS 75970, at *17-18 (E.D. Va. July 14, 2011) (finding that the plaintiff could not pursue a claim because she had not been fired, and the defendant employed more than 15 people); *Wyatt v. Steidel*, No. 3:14-cv-64, 2014 U.S. Dist. LEXIS 111585, at *9-10 (E.D. Va. Aug. 12, 2014);  *Rose-Stanley v. Commonwealth*, No. 2:15-CV-00007, 2015 U.S. Dist. LEXIS 150282, at *10 (W.D. Va. Nov. 5, 2015) ("It is clear from the Complaint that Plaintiff was not discharged.")

Michael cannot maintain her VHRA claims in counts 6-10 of her Complaint.  For each of these reasons, this Court should dismiss the VHRA claims with prejudice under Fed. R. Civ. P. 12(b)(1).

> **2.**      <u>**Plaintiff's ADEA Claim (Count 11) is Barred by Sovereign Immunity.**</u>

The doctrine of sovereign immunity remains "alive and well in Virginia." *Gray v. Va. Secy. of Transp.,* 276 Va. 93, 101 (2008) (quoting *Messina v. Burden,* 228 Va. 301, 307 (1984)).  State sovereign immunity is "based on the logical and practical ground that there can be no legal right as against the authority that makes the law on which the right depends." *Stewart v. North Carolina,* 393 F.3d 484, 488 (4th Cir. 2005) (*quoting Nevada v. Hall*, 440 U.S. 410, 416 (1979).

Sovereign immunity protects the Commonwealth and its agencies from actions at law for damages and suits in equity to restrain or compel governmental action. *See Alliance to Save the Mattaponi v. Commonwealth Dept. of Envtl. Quality,* 270 Va. 423, 455 (2005) (citations omitted). Sovereign immunity serves a number of important public purposes:

> including but not limited to protecting the public purse, providing for smooth operation of government, eliminating public inconvenience and danger that might spring from officials being fearful to act, assuring that citizens will be willing to take public jobs, and preventing citizens from improperly influencing the conduct of governmental affairs through the  threat or use of vexatious litigation.

*Messina,* 228 Va. at 308.

"Absent an express statutory or constitutional provision waiving sovereign immunity, the Commonwealth and its agencies are immune from liability for the tortious acts or omissions of their agents and employees." *Rector and Visitors of the Univ. of Virginia v. Carter,* 267 Va. 242, 244 (2004) (citations omitted).  Courts "find waiver only where stated by the most express language or by such overwhelming implications from the text as will leave no room for any other reasonable construction." *Edelman v. Jordan*, 415 U.S. 651, 673 (1974).  With respect to the

ADEA, Virginia has not waived its sovereign immunity.  Likewise, Congress has not abrogated the states' sovereign immunity with respect to ADEA claims.  *See Kimel v. Fla. Bd. of Regents*, 528 U.S. 62, 92 (2000); *Vergès v. Va. Highlands Cmty. Coll.*, No. 1:16-CV-00005, 2016 U.S. Dist. LEXIS 68546, at *14 (W.D. Va. May 25, 2016) (Defendant entitled to Eleventh Amendment Immunity for ADEA claims).  Consequently, Michael's claim under the ADEA must be dismissed with prejudice in its entirety.

**B.**     **PLAINTIFF'S TITLE VII CLAIMS (COUNTS 1-5) MUST BE DISMISSED FOR FAILURE TO STATE A CLAIM UNDER FED. R. CIV. P. 12(B)(6) AND THE "PLAUSIBILITY" STANDARD UNDER *TWOMBLY* AND *IQBAL***

Fed. R. Civ. P. 12(b)(6) provides for dismissal of a complaint for "failure to state a claim upon which relief can be granted."  Specifically, "[t]he function of a motion to dismiss for failure to state a claim is to test the legal sufficiency of the complaint." *Allen,* 245 F. Supp. 2d at 783 (citing *Neitzke v. Williams*, 490 U.S. 319, 326-27 (1989)).  District courts must examine the complaint to determine whether the plaintiff has alleged  sufficient facts to make a particular cause of action "plausible."  Specifically:

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations . . ., a plaintiff's obligation to provide the 'grounds' of  his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do…. Factual allegations must be enough to raise a right to relief above the speculative level on  the assumption that all the allegations in the complaint are true.

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted).  A complaint must provide a defendant more than mere "notice" of those claims that a plaintiff may bring against it:

> Rule 8(a)(2) still requires a 'showing,' rather than a blanket assertion, of entitlement to relief. Without some factual allegation in the complaint, it is hard to see how a claimant could satisfy the requirement of providing not only 'fair notice' of the nature of the claim, but also 'grounds' on which the claim rests.

*Id.* at 555 n.3 (citing 5 Wright & Miller § 1202, at 94, 95 ("Rule 8(a) 'contemplates the statement of circumstances, occurrences and events in support of the claim presented' and does not authorize a pleader's 'bare averment that he wants relief and is entitled to it'")). The "plausibility" standard is not a "probability requirement," but it does require more than a possibility that a defendant has acted unlawfully. *Id.* at 556. While a plaintiff is not charged with pleading facts sufficient to prove her case in order to survive a motion to dismiss, a complaint's factual allegations must nonetheless be enough to raise a right of relief above the speculative level. *See Coleman v. Md. Court of Appeals*, 626 F.3d 187, 190 (4th Cir. 2010) (citing *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 510-15 (2002); *see also Twombly*, 550 U.S. at 555)); *Bass v. E.I. DuPont de Nemours & Co.*, 324 F.3d 761, 765 (4th Cir. 2003).

### 1. **Plaintiff Fails to State a Title VII for Race Discrimination (Count 1).**

In order to state a disparate treatment claim for racial discrimination, Michael must demonstrate that (1) she is a member of a protected class; (2) she suffered an adverse employment action; (3) at the time of such action, she performed at a level which met her employer's legitimate business expectations; and (4) similarly-situated employees outside of the protected class were retained under similar circumstances. *Ze-Ze v. Kaiser Permanente Mid-Atl. States Regions, Inc.,* 833 F. Supp. 2d 543, 5 48 (E.D. Va. 2011); *Brinkley v. Harbour Rec. Club*, 180 F.3d 598, 607 (4th Cir. 1999). Discrimination requires "evidence of conduct or statements that both reflect directly the alleged discriminatory attitude and that bear directly on the contested employment decision." *Fuller v. Phipps*, 67 F.3d 1137, 1142 (4th Cir. 1995).

### a. **Michael Fails to Allege an Adverse Employment Action.**

"To prevail on her Title VII claim, [Michael] must show that [s]he suffered an adverse employment action as a result of Title VII disparate treatment." *Bauer v. Holder*, 25 F. Supp. 3d

842, 850-51 (E.D. Va. 2014). "An adverse employment action is a discriminatory act which adversely affects the terms, conditions, or benefits of the plaintiff's employment." *James v. Booz-Allen & Hamilton, Inc.*, 368 F.3d 371, 375 (4th Cir. 2004) (citation omitted); s*ee Thompson v. Potomac Elec. Power Co.*, 312 F.3d 645, 650-51 (4th Cir. 2002); *Munday v. Waste Mgmt. of N. Am., Inc.*, 126 F.3d 239, 243 (4th Cir. 1997). "A tangible employment action constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761 (1998). The Fourth Circuit continues to apply the more stringent definition of adverse employment actions to Title VII discrimination claims. *See, e.g., Jyachosky v. Winter*, 343 F. App'x. 871, 877 (4th Cir. 2009); *Holland v. Washington Homes, Inc.*, 487 F.3d 208, 219 (4th Cir. 2007).

None of Michael's alleged incidents rise to the level of an adverse employment action. Indeed, this Court has previously held that being subjected to undue scrutiny, fabricated performance criticisms, false negative evaluations, undermined authority, and restricted travel do not constitute adverse employment actions. *See Taylor v. Republic Servs.*, 2013 U.S. Dist. LEXIS 16222, at *16-17 (E.D. Va. Feb. 6, 2013); *see also Thompson v. Potomac Elec. Power Co.*, 312 F.3d 645, 651 (4th Cir. 2002) (disciplinary discussions that did not result in lost pay or position failed to state a prima facie claim of discrimination, even if different than other employees); *Smith v. Sec'y of Army*, 2012 U.S. Dist. LEXIS 126194 (E.D. Va. Sep. 5, 2012) (alleged disrespectful conduct not an adverse employment action); *Dawson v. Rumsfeld*, 2006 U.S. Dist. LEXIS 17305, at *17-18 (E.D. Va. Feb. 8, 2006) ("Increased scrutiny of an employee under the general policies and disciplinary procedures governing her employment is therefore not an adverse employment

action.").  Michael cannot allege that she suffered any loss of pay, benefits, or other tangible detriment as a result of VCU's actions.

As a result, Michael has the additional burden of proving that she was constructively discharged. *See Pa. State Police v. Suders*, 542 U.S. 129, 143 (2004). To demonstrate constructive discharge, Michael must allege and prove: (1) the deliberateness of the employer's actions, motivated by discriminatory bias, and (2) the objective intolerability of the working conditions. *Honor v. Booz-Allen & Hamilton, Inc*., 383 F.3d 180, 186-87 (4th Cir. 2004).  Michael cannot allege that any of her supervisor's actions motivated by bias, intended to cause her to resign, or were objectively intolerable.

First, Michael's unsupported allegations of discrimination lack plausibility where, as here, the alleged harasser, Kniska, is the same individual who hired her.  The Fourth Circuit has noted a presumption against discriminatory bias in such case.  *See Proud v. Stone,* 945 F.2d 796, 798 (4th Cir. 1991).  Moreover, the clear evidence is that Kniska went to great lengths to accommodate Michael's poor performance.  For example, Kniska (i) allowed Michael the opportunity to rewrite her job description; (ii) significantly reduced Michael's workload expectation for various initiatives; (iii) developed a detailed performance improvement plan; (iv) extended Michael's performance review for an additional two months to allot enough time for Michael to demonstrate improvement;  (v) provided extensive one-on-one onboarding for longer than expected; (vi) held weekly meetings and provided written communication addressing Michael's performance issues, and (vii) paid for Michael's memberships in professional associations and national training conferences each year.  (Compl., Ex. 2 - Page 6).  Likewise, Michael did not receive a required certification within one year from the date she was hired (as stated in the advertised posting for this position).  Kniska provided Michael additional time to complete her certification without

penalty on her first evaluation.  (Compl., Ex. 2 - Page 3, ¶ 4).  If discrimination had been a motivating factor for the Plaintiff's performance evaluations, Michael would not have been provided any of these opportunities.  Michael simply has not alleged facts to support a plausible claim of discriminatory animus.

Assuming, *arguendo*, that Michael could demonstrate discriminatory bias, she still cannot meet the "objective intolerability" standard for constructive discharge. A prima facie case for retaliatory constructive discharge requires "something more" than actionable retaliation.  *Suders*, 542 U.S. at 147; *Munday v. Waste Mgmt. of N. Am.*, 126 F.3d 239, 243 (4th Cir. 1997) (holding that retaliatory constructive discharge requires more than *prima facie* case of retaliatory adverse employment action). The bar is quite high in constructive discharge cases. A plaintiff must show she had no other choice but to quit. *See, e.g., Matvia v. Bald Head Island Mgmt.*, 259 F.3d 261, 273 (4th Cir. 2001) (denying a claim for constructive discharge and noting that "co-worker ostracism [and] denial of management position...would not have compelled the reasonable person to resign.  These incidents might have made the workplace less enjoyable for a reasonable person, but not intolerable"). "'[D]issatisfaction with work assignments, a feeling of being unfairly criticized, or difficult or unpleasant working conditions are not so intolerable as to compel a reasonable person to resign.'" *Williams v. Giant Food, Inc.*, 370 F.3d 423, 434 (4th Cir. 2004) (quoting *Carter v. Ball*, 33 F.3d 450, 459 (4th Cir. 1994)).  Simply put, an employee is not guaranteed "a working environment free of stress." *Goldsmith v. Mayor & City Council of Baltimore*, 987 F.2d 1064, 1072 (4th Cir. 1993) (citation omitted).

Michael cannot allege that VCU's conduct was "so intolerable that a reasonable person in [Plaintiff's] position would have felt compelled to resign." *Suders*, 542 U.S. at 141. Michael's

allegations indicate that VCU's actions were not objectively hostile, and VCU was treating her fairly. As such, Michael cannot state a claim for constructive discharge, and her claim fails.

### b. Michael Was Not Meeting VCU's Legitimate Business Expectations.

Michael alleges that "immediately after Plaintiff made her complaints, [her] supervisor began finding fault with all of Plaintiff's work." (Compl., ¶ 14). However, the evidence does not support Michael's contention that she was performing her job satisfactorily at any point during her employment with VCU. Even taken in the light most favorable to her, the multiple performance evaluations, the performance improvement plans, the one on one counseling, and the modification of job duties (which all occurred prior to any complaint) indicate that she was not meeting VCU's legitimate business expectations. Michael has not even alleged that she was performing her job satisfactorily, although her subjective belief would still be insufficient as a matter of law. *See Stewart v. Morgan State Univ.*, 606 F. App'x. 48, 49 (4th Cir. 2015). Therefore, she cannot establish the most basic requirements to support a claim of discrimination.

### c. Michael Has Not Identified Similarly Situated Employees.

Michael contends that she was treated differently than her Caucasian colleagues. Therefore, the validity of her claims depend upon whether the comparators are indeed similarly situated. *Haywood v. Locke*, 387 F. App'x. 355, 359 (4th Cir. 2010) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 804 (1973)) ("[I]t is the plaintiff's task to demonstrate that similarly situated employees were not treated equally.") Michael only alleges four situations where she contends Kniska treated Caucasian employees differently. They are as follows:

First, Michael alleges that Kniska began communicating with her almost solely by email, but "did not communicate with Caucasian employees almost solely via email." (Compl. ¶¶ 15-16). Beyond her bald allegations, Michael fails to provide a single factual example to support her

conclusion. Specifically, she does not identify whether these alleged comparators were also experiencing significant performance issues, had received poor evaluations, or been placed on a performance improvement plan. Moreover, Michael's evaluation demonstrates that she and Kniska had weekly meetings <u>and</u> written communication to address her performance issues. (Compl., Ex. 2 - Page 6). Despite these efforts, Michael continued "to lack the improvement and progression needed to sufficiently meet the needs and expectations of her position as a senior compliance professional." *Id.* Rather, than being discriminatory, Kniska's attempts to communicate via email were a reasonable means to address Michael's performance issues.

Second, Michael contends that Kniska denied her the opportunity to attend a conference at Cornell University. (Compl. ¶ 17). Michael again concludes that she is not aware of any Caucasian employees who were denied the opportunity to attend conferences around the same time. (Compl. ¶ 17). Notably, Michael does not allege that any Caucasian employees were allowed to attend the conference at issue (or even a similarly expensive conference). Moreover, it is clear that Michael was allowed to attend a variety of other conferences during her tenure with VCU. As such, this allegation cannot support her claim.

Third, Michael alleges that Kniska penalized her, but not Caucasian employees, for obtaining a necessary certification during her first year of employment. (Compl. ¶¶ 23-25). Again, Michael's evaluation contradicts this allegation. Michael <u>did not</u> receive her certification as alleged. (Compl., Ex. 2 - Page 3, ¶ 4). Rather, Michael was expected to obtain the certification by April 2014 (within 1 year of hire), as stated in the advertised posting for this position. Michael requested and was provided additional time to complete her certification without penalty on her first evaluation. However, she failed to do so. Kniska noted that "this is inconsistent with other team members at and below her organizational chart level. This deficiency has reduced her rating

in this area this cycle." (Compl., Ex. 2 - Page 3, ¶ 4). Again, Michael has not identified a single comparator that failed to obtain their certification in a timely manner and was treated differently.

Finally, Michael alleges that Kniska terminated two African-American women. (Compl. ¶ 33-35). Michael does not elaborate on the reasons for their termination beyond her belief that one of the employees was terminated based on "a difference of opinion." *Id.* Michael then argues that three Caucasian women never received reprimands, poor evaluations or termination during the same period of time to the best of Michael's knowledge. (Compl. ¶ 36). Michael never indicates any performance issues that would have warranted such reprimands.

Based on these examples, Michael cannot prove that the comparator employees were similar in all relevant respects, including "engaging in the same conduct without differentiating or mitigating circumstances." *Sharif v. United Airlines, Inc.*, 2015 U.S. Dist. LEXIS 86009, at *26-27 (E.D. Va. July 1, 2015). As such, she has failed to state a claim for which relief may be granted, and her disparate treatment claim should be dismissed.

**2.   Plaintiff Fails to State a Title VII Hostile Environment Claim (Count 2).**

In order to make out a hostile work environment claim, "a plaintiff must show that the offending conduct (1) was unwelcome, (2) was because of her race, (3) was sufficiently severe or pervasive to alter the conditions of her employment and create an abusive working environment, and (4) was imputable to her employer." *Hoyle v. Freightliner, LLC*, 650 F.3d 321, 331 (4th Cir. 2011) (citation omitted); *Foster v. Univ. of Maryland-Eastern Shore*, 787 F.3d 243, 254 (4th Cir. 2015). Michael's claim fails because they were neither based on race or sufficiently severe and pervasive.

In this case, Michael attributes Kniska's behavior to race because Michael heard Kniska make three comments in a single meeting on July 14, 2015. Notably, none of the alleged comments

were directed at Michael.    Further, Michael has failed to provide any context to demonstrate that the comments were based on race.  For instance, questioning who is responsible for "hiring these people" is wholly insufficient to demonstrate that the comment was racially motivated even if the subjects of the comment were African-American.  Likewise, Kniska's alleged comment about Dr. Wanda Mitchell demonstrates nothing more than her opinion that any hiring based solely on a particular characteristic is not appropriate.  The final comment alleging that Kniska stated another employee's name was "so ghetto", without more, cannot support a racial harassment claim. Simply put, the term ghetto is racially neutral and can be used to generically describe an impoverished area or situation.  Moreover, it does not come close to objectively stating a hostile work environment claim.  See, e.g. *Harris v. Forklift Sys.*, 510 U.S. 17, 21 (1993) ("mere utterance of an . . . epithet which engenders offensive feelings in an employee does not sufficiently affect the conditions of employment to implicate Title VII.")  The same goes for "simple teasing [and] offhand comments." *See Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998).  An "isolated incident" of harassment can "amount to discriminatory changes in the terms and conditions of employment."    However, the incident must be "extremely serious." *Boyer-Liberto   v. Fontainebleau Corp.*, 786 F.3d 264, 277-78 (4th Cir. 2015) (allowing a claim when the alleged use of a racial slur by the employee's manager that was directed at the employee).  That is not the case here.  *See, e.g. Turner v. Baylor Richardson Medical Ctr.*, 476 F.3d 337, 348 (5th Cir.2007) (holding that a supervisor's repeated references to "ghetto children" was not sufficient to establish the existence of a hostile work environment).

More importantly, Michael's allegations simply ignore what is obvious from her performance evaluation.  Michael's issues were related solely to her performance, not her race. Further, her performance issues occurred throughout her employment at VCU, resulting in two

poor performance evaluations, performance improvement plans, weekly meetings and individual coaching.  As a result, Michael cannot reasonably contend that her failures were the result of some racial animus from the same individual that initially hired her.

Assuming, *arguendo,* that Michael could attribute her disciplinary history to race, she still cannot set forth a hostile environment claim.  To set forth a claim, the alleged harassment must be objectively severe or pervasive to a reasonable person in Plaintiff's position - Plaintiff's allegations that she subjectively believed she was harassed are not enough. *Harris v. Forklift Sys., Inc.,* 510 U.S. 17, 21-22 (1993). The objective prong of the test is "designed to disfavor claims based on individual's hypersensitivity." *EEOC v. Fairbrook Med. Clinic, P.A.,* 609 F.3d 320, 328 (4th Cir. 2010). In determining whether the environment is sufficiently hostile or abusive, courts must consider the totality of the circumstances, including: (1) the frequency of the discriminatory conduct; (2) the severity of the conduct; (3) whether the alleged conduct is physically threatening or humiliating or a mere offensive utterance; and (4) whether the conduct unreasonably interferes with the employee's work performance. *Clark County Sch. Dist. v. Breeden, 532 U.S. 268, 270-71 (2001); Faragher v. City of Boca Raton,* 524 U.S. 775, 787 (1998); *Harris v. Forklift Systems,* 510 U.S. at 23 (1993).  Title VII does not create a general civility code in the workplace.  It only proscribes behavior that is so objectively offensive as to alter the conditions of Michael's employment.  *Oncale v. Sundowner Offshore Servs., Inc.,* 523 U.S. 75, 81 (1998); *Mosby-Grant v. City of Hagerstown,* 630 F.3d 326, 335 (4th Cir. 2010). "Simple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the 'terms and conditions of employment.'" *Breeden,* 532 U.S. *at 271 (*quoting *Faragher, 524 U.S.* at 788).

The Fourth Circuit has recognized that "plaintiffs must clear a high bar in order to satisfy the severe or pervasive test." *EEOC v. Sunbelt Rentals, Inc.,* 521 F.3d 306, 318-19 (4th Cir. 2008) (noting that courts should not "lightly" hold employers liable for scattered incidents). "Workplaces are not always harmonious locales, and even incidents that would objectively give rise to bruised or wounded feelings will not on that account satisfy the severe and pervasive standard." *Id.* As this Court held in *Conyers v. Va. Hous. Dev. Auth.,* No. 3:12-cv-458, 2012 U.S. Dist. LEXIS 134908, at *18 (E.D. Va., Sept. 20, 2012), "[t]he standard for proving a hostile work environment is intentionally set very high, in order to 'filter out complaints attacking the ordinary tribulations of the workplace." (citing *Middlebrooks v. Winter,* No. WGC-05-3209, 2008 U.S. Dist. LEXIS 123312, at *87-88  (D. Md., Mar. 19, 2008). In short, the "work environment must be so polluted with … harassment" that it alters the terms and conditions of the plaintiff's employment. *Anderson v. G.D.C., Inc.,* 281 F.3d 452, 458-59 (4th Cir. 2002). Isolated incidents of harassment alter the conditions of employment only if they are  "extremely serious." *Faragher*, 524 U.S. at 788.

In this case, Michael's allegations are inadequate as a matter of law to support a claim of hostile working environment.  For example, there is no evidence of any racial slurs or insults of any kind being used toward her, nor was she in any way physically threatened.  Instead, Michael alleges that Kniska stated someone else's name was "so ghetto."  She also alleges in conclusory fashion that Kniska retaliated against her for filing a complaint by (i) assigning her an excessive number of tasks (Compl. ¶ 13); (ii) finding fault with all of her work (Compl. ¶ 14); (iii) communicating with her almost solely via email (Compl. ¶ 15); (iv) denying her the opportunity to attend a conference at Cornell University (Compl. ¶ 17); (v) ignoring her request for annual leave (Compl. ¶¶ 18-19); (vi) providing an annual review which purportedly included

misstatements and untrue statements concerning her performance (Compl. ¶¶ 20-22); and (vii) penalizing her for obtaining a certification within her first year of employment.

However, the evidence clearly shows that Kniska did not create a hostile work environment.  Michael was provided every opportunity to succeed throughout her employment. For example, Kniska (i) allowed Michael to create her own job description; (ii) did not require Michael to perform certain tasks associated with her position; (iii) provided Michael detailed performance evaluations; (iv) worked with Michael on a performance improvement plan; (v) provided Michael training opportunities and seminars; and (vi) allowed Michael additional time to obtain her certification.  There is no evidence of conduct, or frequency of conduct, that would reasonably cause a hostile work environment.  *Causey v. Balog*, 162 F.3d 795, 801 (4th Cir. 1998) (conclusory allegations about a general, vaguely hostile atmosphere towards a particular employee are not enough to sustain a hostile environment claim without specific evidentiary examples of incidents of harassment motivated by plaintiff's protected characteristics or actions).  Overall, there is simply insufficient evidence of adequately pervasive or severe conduct directed to Michael to support a claim of abusive or hostile working environment. For these reasons, her claim should be dismissed.

### 3. <u>Plaintiff Fails to State a Title VII Retaliation Claim (Counts 3-5)</u>.

In Counts 3-5, Michael alleges that VCU engaged in a pattern of retaliatory conduct based on her alleged complaints of July 14, 2015, July 22, 2015, and October 21, 2015.  Specifically, Michael alleges that VCU retaliated against her by "giving her excessive work, not directly communicating with her except through email, unnecessarily critiquing her work to create stress and providing a negative evaluation of Plaintiff's work."  (Compl. ¶¶ 57 and 62).  In addition,

Michael claims that VCU "retaliated against her by stating that she was terminated when she retired and by not providing her the proper amount of benefits after she resigned." (Compl. ¶ 66).

To allege a claim of retaliation, Michael must show: (1) protected activity; (2) an adverse employment action; and (3) a causal connection existing between the protected activity and the adverse action. It is not enough that Michael, identifies a possible connection. Michael must show that her protected activity was the "but-for" cause of the adverse employment action. *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 133 S. Ct. 2517, 2532-34, 186 L. Ed. 2d 503 (2013). In other words, it must be the "real reason for the challenged conduct." *Foster v. Univ. of Maryland-Eastern Shore*, 787 F.3d 243, 252 (4th Cir. 2015). As noted below, Michael cannot establish even the minimal basis for a prima facie case of retaliation.

> a. **Plaintiff Has Failed to Allege that She Suffered an Adverse Employment Action With Respect to Her Retaliation Claim.**

In the context of a retaliation claim, an "adverse employment action" is one that a "reasonable employee" would have found "materially adverse"—that is, a consequence which "well might have 'dissuaded a reasonable worker from making or supporting a charge of discrimination.'" *Burlington Northern & Santa Fe Ry. v. White*, 548 U.S. 53, 68 (2006). "We speak of material adversity because we believe it is important to separate significant from trivial harms … The anti-retaliation provision seeks to prevent employer interference with 'unfettered access' to Title VII's remedial mechanisms… It does so by prohibiting employer actions that are likely 'to deter victims of discrimination from complaining to the EEOC,' the courts, and their employers … And normally petty slights, minor annoyances, and simple lack of good manners will not create such deterrence… We refer to reactions of a reasonable employee because we believe that the provision's standard for judging harm must be objective." *Id.*

Michael's retaliation claims fail to objectively show an adverse employment action. While Michael claims that she was provided excessive work, she does not identify a single task that was assigned outside of her job description.  Further, the evaluation demonstrates that she was allowed to modify her job duties to enhance her performance, provided additional time and resources to complete her work, and not assigned certain tasks due to her performance deficiencies.  Likewise, it is not an adverse action to communicate with someone through email (in addition to the aforementioned weekly meetings), especially when they are experiencing performance issues. Michael was not terminated, suspended, demoted, or reassigned.  She did not lose any pay or benefits.  While Michael did receive another poor performance evaluation, this admonishment, standing alone, does not meet the objective adverse employment action standard.  Instead, Michael must demonstrate that the evaluation entailed a deleterious change in the "salary, job title, level of responsibility, or opportunity for promotion" of their employment. ).  "A poor performance evaluation is actionable only where the employer subsequently uses the evaluation as a basis to detrimentally alter the terms or conditions of the recipient's employment." *Sercer v. Holder*, 104 F. Supp. 3d 746, 751 (E.D. Va. 2015); *Hinton v. Va. Union Univ.*, 185 F. Supp. 3d 807, 832 (E. D. Va. 2016) ("…a criticism that carries with it no consequences is not materially adverse and therefore not actionable.")[5]

Likewise, Michael's post-resignation claims that her employment was listed as terminated and she was denied health benefits do not support her retaliation claim.  First, Michael acknowledges in her Complaint that she resigned causing her employment to terminate.  VCU

---

[5] Further, Michael's allegations do not subjectively constitute an adverse employment action because they did not dissuade Michael from filing a complaint.  Michael alleges that she complained of all of this activity on October 21, 2015.  Therefore, she cannot reasonably contend that the actions would have dissuaded her from making or supporting a charge of discrimination.

updating its systems to reflect that her employment terminated is simply an acknowledgment of Michael's actions, and a true reflection of what occurred.  Michael cannot show that such action was the result of retaliatory animus, and has not identified a single individual that was coded differently when their employment terminated upon resignation.  Second, Michael's allegation that she was unlawfully denied health benefits through December 11, 2015 does not support her claim of retaliation.  Rather, it reflects her misunderstanding of the health benefits available upon resignation throughout the Commonwealth of Virginia.   The Commonwealth's plan provides, in part, that an employee's coverage ceases at the end of the month in which an employee terminates her employment.  Michael does not allege the actual date her health benefits ceased presumably because it was in compliance with the actual benefit plan.  Further, she does not identify another individual that received such enhanced benefits.  In light of the foregoing, Michael cannot show any materially adverse employment action. Therefore, her retaliation claim must be dismissed.

### b. Plaintiff Cannot Show Any Causal Connection Between Her Protected Activity and Any Adverse Action.

Assuming, *arguendo,* that the second negative performance review was a materially adverse action, Michael cannot demonstrate as a matter of law that it was the "but-for" result of her complaints.  It is axiomatic that Michael's allegations of retaliation must actually be caused by her underlying complaints of discrimination.   In this case, the Complaint and its exhibits demonstrate an ongoing performance issue with Michael that included prior negative evaluations, performance improvement plans, additional training and mentoring.  Michael has not alleged, nor can she, that she overcame these difficulties at any point during her employment.

Based on these concerns, Michael cannot demonstrate any causal connection between her protected activity and any adverse action.  "[A] bad outcome absent a plausible illegal motive is insufficient to advance the type of 'causal connection' necessary to assert a viable claim for

retaliation." *Spain v. Va. Comm. Univ.*, 2009 U.S. Dist LEXIS 70524, at *25 (E.D. Va. August

11, 2009) (*citing Smith v. Commonwealth of Va.*, 2009 U.S. Dist. LEXIS 60828, at **12-13 (E.D.

Va. July 15, 2009), *aff'd* 353 F.App'x. 790 (4th Cir. 2009) ("Smith has articulated no other facts

that even remotely suggest that his race was the basis for the denial of his voter registration. His

entire claim of a violation of his rights rests on the inference that, because he is African-American

and his voter's registration was denied, it must be the case that the former fact caused the latter.

This is the very sort of pleading the Supreme Court condemned as inadequate in Twombly.")).

Similar to the plaintiffs in *Smith* and *Spain*, Michael fails to plead any facts linking her negative

performance evaluations to her race complaint.  Rather, she applies the same faulty logic rejected

in *Smith* and *Spain.*  Therefore, her discrimination claim should be dismissed for failing to meet

the plausibility standards required in *Twombly/Iqbal*.

## IV. CONCLUSION

VCU respectfully requests that this Motion to Dismiss be granted, that Plaintiff's

Complaint (and all the claims made therein) be dismissed, with prejudice, that VCU be awarded

its costs incurred herein, and that such other relief be granted as the Court deems just and

appropriate.

Respectfully Submitted,
**The Virginia Commonwealth University**
**Board of Visitors**
By: _____/s/_____
G. William Norris, Jr.* (VSB No.: 41754)
Associate University Counsel and
Senior Assistant Attorney General
Virginia Commonwealth University
Office of University Counsel
P.O. Box 843090
Richmond, Virginia 23284
(804) 828-6610
(804) 828-6614 (facsimile)
gwnorris@vcu.edu

## **CERTIFICATE OF SERVICE**

I hereby certify that, on this 23rd day of February, 2018, the foregoing **MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS** was filed electronically with the Clerk of Court using the CM/ECF system. I further certify that a paper copy of the MEMORANDUM was sent via overnight delivery, postage prepaid to the following:

> Dipo Akin-Deko
> Akin-Deko Professionals PLLC
> 919 Prince Street, 2nd Floor
> Alexandria, VA 22314
> dakindeko@adpfirm.com
> **Counsel for Plaintiff**

> By:  _____/s/_____
> G. William Norris, Jr.* (VSB No.: 41754)
> Associate University Counsel and
> Senior Assistant Attorney General
> Virginia Commonwealth University
> Office of University Counsel
> P.O. Box 843090
> Richmond, Virginia 23284
> (804) 828-6610
> (804) 828-6614 (facsimile)
> gwnorris@vcu.edu