IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

AUDREY MICHAEL,
    Plaintiff,

v.                                                                       Civil Action No. 3:18-cv-125-JAG

VIRGINIA COMMONWEALTH UNIVERSITY,
    Defendant.

## OPINION

Audrey Michael, a 51-year-old African-American woman, began working as a senior compliance and policy analyst for Virginia Commonwealth University ("VCU") in March, 2013. In a 2015 meeting, Michael's supervisor made several derogatory comments about African-American women. Michael complained about the comments, and experienced retaliation as a result. Michael resigned on October 27, 2015.

Michael now brings an eleven-count complaint against VCU for violations of Title VII of the Civil Rights Act of 1964, the Virginia Human Rights Act ("VHRA"), and the Age Discrimination in Employment Act ("ADEA"). VCU has moved to dismiss the complaint. The Court grants VCU's motion to dismiss as to all claims, but gives Michael leave to amend her Title VII claims.

To summarize the Court's holdings, Michael's Title VII discrimination claim fails because she does not allege an adverse employment action. She does not plead severe and pervasive conduct to establish a Title VII hostile work environment claim. Her Title VII retaliation claim fails because, even under the relaxed standard for retaliation claims, she does not allege sufficiently adverse action to support a claim. Her VHRA claims fail because the

statute does not even apply to VCU. Finally, her ADEA claim cannot go forward because VCU enjoys immunity from claims under the ADEA.

## I. FACTS ALLEGED IN COMPLAINT[1]

Michael worked for VCU as a senior compliance and policy analyst from March, 2013, through October, 2015. In a July 14, 2015 meeting, her supervisor, Jaqueline Kniska, made three derogatory comments about African-American females. First, Kniska called Dr. Quincy Byrdsong's name "so ghetto." (Compl. at ¶ 10.) Dr. Byrdsong is an African-American woman. Second, Kniska asked who was responsible for "hiring these people," referring to two African-American women. (*Id.*) Finally, Kniska complained that Dr. Wanda Mitchell, an African-American woman, had stated that VCU did not employ enough black employees. Kniska asked what would happen if she made comments similar to Dr. Mitchell's about female employees.

On July 15, Michael spoke to her ombudsman about the comments, and on July 22, she made an official complaint to the Director of Audit and Compliance Services. After she complained, Kniska assigned Michael excessive tasks, found fault in all of her work, and communicated with her almost solely via e-mail. Michael observed that Kniska did not limit her communications with Caucasian employees to mostly e-mail. Additionally, Kniska denied Michael the opportunity to attend a conference at Cornell University, but VCU did not deny Caucasian employees the opportunity to attend conferences around the same time.

On October 13, Michael requested annual leave, but Kniska ignored the request. On October 21, Michael received her annual review, which Kniska had completed. Michael's review included misstatements about her performance. Michael claims her review penalized her

---

[1] Michael has attached documents from her personnel file that seem to put the lie to some of her characterizations of her performance and mistreatment, but at the motion to dismiss stage, the Court must accept the plaintiff's allegations as true.

2

"for obtaining a certification within the first year of employment," but did not similarly penalize Caucasian employees.[2] (Compl. at ¶ 23.) Michael immediately filed a grievance about her evaluation, and on October 26, she complained to the Director of Audit and Compliance about the hostile work environment and discrimination. Michael submitted her resignation on October 27, 2015. Michael claims that VCU should have provided medical coverage from her last day, November 11, through December 11, but did not. Since leaving VCU, Michael has learned that VCU's system lists her employment as "terminated" rather than "resigned." (Compl. at ¶ 32.)

## II. DISCUSSION[3]

Michael's complaint alleges eleven counts: (I) Title VII violation for race discrimination; (II) Title VII violation for hostile work environment based on race; (III) Title VII retaliation for her July 15, 2015 complaint; (IV) Title VII retaliation for her July 22, 2015 complaint; (V) Title VII retaliation for her October 21, 2015 complaint; (VI) VHRA violation for race discrimination; (VII) VHRA violation for hostile work environment; (VIII) VHRA retaliation for her July 15,

---

[2] Michael's 2015 performance evaluation indicates that actually she did <u>not</u> obtain a certification that VCU expected her to obtain by April, 2014. (Compl. Exh. 2, at 3.)

[3] VCU moved to dismiss under Rules 12(b)(1) and 12(b)(6). A motion under Rule 12(b)(1) tests the court's subject matter jurisdiction. The plaintiff bears the burden of proving proper subject matter jurisdiction as the party asserting jurisdiction. *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982). A Rule 12(b)(6) motion gauges the sufficiency of a complaint without resolving any factual discrepancies or testing the merits of the claims. *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992). In considering the motion, a court must accept all allegations in the complaint as true and must draw all reasonable inferences in favor of the plaintiff. *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 253 (4th Cir. 2009) (citing *Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999)). The principle that a court must accept all allegations as true, however, does not apply to legal conclusions. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). To survive a Rule 12(b)(6) motion to dismiss, a complaint must state facts that, when accepted as true, state a claim to relief that is plausible on its face. *Id.* "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)).

3

2015 complaint; (IX) VHRA retaliation for her July 22, 2015 complaint; (X) VHRA retaliation for her October 21, 2015 complaint; and (XI) ADEA violation.

### A. Title VII (Counts I – V)

#### 1. Race Discrimination (Count I)

Under Title VII, an employer may not refuse to hire, discharge, or otherwise discriminate against an individual regarding compensation, terms, conditions, or privileges of employment, due to the individual's race, color, religion, sex, or national origin. 42 U.S.C. § 2000e–2(a)(1). Without direct evidence of racial discrimination, a plaintiff alleging discrimination under Title VII must establish:

> (1) that she was a member of a protected racial, ethnic, or other group; (2) that she experienced an adverse employment action; (3) that at the time of the adverse employment action, she was performing her job at a level that met her employer's legitimate expectations; and (4) that the position remained open or was filled by a similarly qualified applicant outside of the plaintiff's protected class, or that other employees who are not members of the protected class were retained under similar circumstances.

*Ze-Ze v. Kaiser Permanente Mid-Atl. States Regions, Inc.*, 833 F. Supp. 2d 543, 548 (E.D. Va. 2011).

In this case, Michael fails to plead an adverse employment action. To do so, she would have to allege some discriminatory act that adversely affected the terms, conditions, or benefits of her employment. *James v. Booz-Allen & Hamilton, Inc.*, 368 F.3d 371, 375 (4th Cir. 2004). Michael need not show that VCU terminated her, as "[a]n action that is 'essentially a career-ending action or a harbinger of dismissal'" may constitute adverse action. *Mveng-Whitted v. Va. State Univ.*, No. 3:11-cv-842, 2012 WL 3686285, at *5 (E.D. Va. Aug. 24, 2012) (quoting *Carter v. Ball*, 33 F.3d 450, 459 (4th Cir. 1994)). Poor performance evaluations, denial of training opportunities, and disciplinary actions, however, have not met this definition. *Thompson*

*v. Potomac Elec. Power Co.*, 312 F.3d 645, 651 (4th Cir. 2002). Similarly, undue scrutiny, condescension, fabricated criticisms of a plaintiff's work, unfavorable evaluations, and restricted travel have failed to qualify as adverse employment actions. *Taylor v. Republic Servs., Inc.*, No. 12-cv-523, 2013 WL 487042, at *5 (E.D. Va. Feb. 6, 2013).

Michael alleges that Kniska assigned her excessive work, communicated with her almost solely by e-mail, and found fault in her work. Additionally, Kniska denied Michael the opportunity to attend a conference, issued her a poor performance evaluation, and ignored Michael's request for leave. These allegations, even viewed in the light most favorable to Michael, do not constitute adverse employment actions. *See Thompson*, 312 F.3d at 651; *Taylor*, 2013 WL 487042, at *5. Nor has Michael shown that VCU acted in a way that essentially ended her career or forced her to resign. *See Mveng-Whitted*, 2012 WL 3686285, at *5.

Because Michael does not adequately plead a necessary element of her racial discrimination claim, the Court will dismiss Count I.[4] Michael, however, may amend her complaint to address the pleading deficiencies for this claim.

### 2. *Hostile Work Environment (Count II)*

To plead a hostile work environment claim, a plaintiff must show (1) unwelcome conduct; (2) due to her race; (3) that was "sufficiently severe or pervasive to alter the conditions of her employment and create an abusive working environment;" and (4) that can be imputed to her employer. *Foster v. Univ. of Md.-E. Shore*, 787 F.3d 243, 254 (4th Cir. 2015) (quoting *Hoyle v. Freightliner, LLC*, 650 F.3d 321, 331 (4th Cir. 2011)). To determine if the offending conduct was severe or pervasive, courts look at the totality of the circumstances, including (1) frequency;

---

[4] Michael does not satisfy this threshold requirement, so the Court will not address the remaining elements. Based on her evaluation, however, Michael may struggle to show another element: that she performed her job at a level that met VCU's expectations before the events described in her complaint. (Compl. Exh. 2.)

5

(2) severity; (3) whether the conduct was physically threatening or humiliating, or merely an offensive utterance; and (4) whether the conduct unreasonably interfered with the plaintiff's work performance. *Clark Cty. Sch. Dist. v. Breeden*, 532 U.S. 268, 270–71 (2001). A plaintiff "must clear a high bar" to meet the severe or pervasive standard. *EEOC v. Sunbelt Rentals, Inc.*, 521 F.3d 306, 315 (4th Cir. 2008). An offensive epithet, simple teasing, and offhand remarks will not satisfy the test. *Boyer-Liberto v. Fontainebleau Corp.*, 786 F.3d 264, 277 (4th Cir. 2015).

Michael has not pled facts indicating that any unwelcome conduct qualified as severe or pervasive enough to alter the conditions of her employment and create an abusive work environment. Kniska made several comments in one meeting that offended Michael, but these isolated remarks do not meet the high bar for a hostile work environment claim. *See Boyer-Liberto*, 786 F.3d at 277 (noting that viable claims often involve repeated conduct, unless an "extremely serious" isolated incident occurs). The Court will dismiss Count II, but Michael may amend her complaint to show that some unwelcome comment altered the conditions of her employment and created an abusive working environment.

### 3. *Retaliation (Counts III – V)*

A plaintiff alleging retaliation must plead that (1) she engaged in a protected activity; (2) her employer took materially adverse action against her; and (3) the protected activity caused the adverse action. *Strothers v. City of Laurel, Md.*, __ F.3d __, No. 17-1237, 2018 WL 3321317, at *4–5 (4th Cir. July 6, 2018). Protected activity includes complaints about "actions that are not actually unlawful under Title VII," as long as the employee holds an objectively reasonable belief that "a Title VII violation has happened or is in progress." *Id.* at *4. Thus, complaining to supervisors about possible Title VII violations can constitute protected activity. *See Ingleson v.*

6

*Burlington Med. Supplies, Inc.*, 141 F. Supp. 3d 579, 584 (E.D. Va. 2015). The second element creates a lower standard than adverse action requirements in other contexts. *Hinton v. Va. Union Univ.*, 185 F. Supp. 3d 807, 831 (E.D. Va. 2016). In retaliation cases, an employer's conduct must be "so materially adverse as to dissuade a reasonable employee from engaging in protected activity." *Id.* at 834. Finally, a plaintiff alleging retaliation must show that her protected activity serves as the "but-for" cause of her employer's adverse action. *Ingleson*, 141 F. Supp. 3d at 583.

Michael fails to plead the type of adverse action that meets the relaxed standard of adverse action required in retaliation claims. She does not allege actions that would "dissuade a reasonable employee from engaging in protected activity." *Hinton*, 185 F. Supp. 3d at 832. She cites Kniska giving her extra work, communicating with her via e-mail, and criticizing her work, including through a negative evaluation. Even under the more generous standard, poor performance evaluations, negative comments, and reprimands without collateral consequences do not constitute adverse action. *See Parsons v. Wynne*, 221 F. App'x 197, 198 (4th Cir. 2007); *Wilson v. City of Chesapeake*, 290 F. Supp. 3d 444, 462 (E.D. Va. 2018), *appeal docketed*, 18-462 (4th Cir. 2018). Moreover, Michael's performance evaluation indicates that she underperformed prior to her complaints. Similarly, receiving more work would not discourage a reasonable employee from engaging in protected activity. *Hughes v. Navy Fed. Credit Union*, No. 1:10-cv-1430, 2012 WL 32404, at *13 (E.D. Va. Jan. 4, 2012). As for Kniska's e-mail communication, Title VII's retaliation provision does not protect against "petty slights, minor annoyances, and simple lack of good manners." *Hinton*, 185 F. Supp. 3d at 832 (internal quotation omitted). Michael's complaint thus differs from the case she cites, in which the plaintiff's "treatment at work changed dramatically" after she complained about a Title VII violation. *Bryant v. Aiken Reg'l Med. Ctrs., Inc.*, 333 F.3d 536, 544 (4th Cir. 2003).

Michael also alleges that VCU's system indicated VCU terminated her when she actually resigned. This seems unlikely to dissuade a reasonable employee from engaging in protected activity, and Michael does not allege that VCU coded her termination any differently from its normal process due to her complaints.[5] Thus, the Court will dismiss Counts III, IV, and V, but will allow Michael to amend her complaint to plead facts supporting her retaliation claim.

## B. VHRA (Counts VI – X)[6]

The VHRA prevents employers with more than five but less than 15 employees from discharging employees based on "race, color, religion, national origin, sex, pregnancy, childbirth or related medical conditions, including lactation." Va. Code. § 2.2-3903(B). The act provides protection against employer discrimination that federal laws do not cover. *Wright v. Hilldrup Moving & Storage*, No. 1:16-cv-1349, 2017 WL 2262842, at *5 n.5 (E.D. Va. May 23, 2017).

Michael has not alleged that VCU employs less than fifteen employees. In fact, VCU employs well over fifteen employees. *See Walton v. Sch. Bd. of Gloucester Cty.*, No. 4:06-cv-75, 2006 WL 3838235, at *5 (E.D. Va. Dec. 4, 2006) (dismissing VHRA claims because the defendant employed at least fifteen people); *Richardson v. Prince William Cty.*, No. 1:17-cv-761, 2018 WL 548666, at *3 (E.D. Va. Jan. 24, 2018) (taking judicial notice that the defendant had more than fifteen employees and dismissing the plaintiff's VHRA count).

---

[5] Michael also alleges that VCU did not give her 30 days of insurance benefits after her resignation. VCU, however, submitted a link to the Commonwealth's healthcare plan, which states that coverage ends on the last day of the month in which eligibility ceases. (Mem. in Supp. of Mot. to Dismiss, at 8 n.4.) The Court may consider this information because VCU includes it in its motion to dismiss, it is integral to the claims in the complaint, and Michael does not dispute its authenticity. *Blankenship v. Manchin*, 471 F.3d 523, 526 n.1 (4th Cir. 2006).

[6] VCU moved to dismiss the VHRA claims for lack of subject matter jurisdiction, but the asserted grounds concern whether Michael stated a claim. The Court thus will decide the motion as to the VHRA claims under 12(b)(6) rather than 12(b)(1). *See Rose-Stanley v. Virginia*, No. 2:15-cv-007, 2015 WL 6756910, at *3 n.1 (W.D. Va. Nov. 5, 2015).

Because Michael has not pled and cannot plead that VCU has the requisite number of employees to bring a claim under the VHRA, the Court dismisses Counts VI – X with prejudice.

### C. ADEA (Count XI)

Sovereign immunity is a jurisdictional issue. *See Research Triangle Inst. v. Bd. of Governors of the Fed. Reserve Sys.*, 132 F.3d 985, 987, 990 (4th Cir. 1997). State sovereign immunity protects the state from actions at law for damages and from suits in equity to restrain or compel governmental action. *Alliance to Save the Mattaponi v. Commonwealth Dep't of Envtl. Quality*, 621 S.E.2d 78, 96 (Va. 2005). This immunity extends to state agents and state instrumentalities. *Rector and Visitors of the Univ. of Va. v. Carter*, 591 S.E.2d 76, 78 (Va. 2004). VCU qualifies as a state agency and enjoys the privileges of immunity.[7] The Eleventh Amendment exemplifies, but does not limit, the broader concept of state sovereign immunity. *See Stewart v. North Carolina*, 393 F.3d 484, 488 (4th Cir. 2005).

A claim against a state agency in federal court may overcome the Eleventh Amendment immunity bar in three ways: (1) Congress abrogating state immunity; (2) a plaintiff seeking only prospective or injunctive relief against a state agent; or (3) a state expressly consenting to suit or waiving its immunity. *See Bd. of Trustees of Univ. of Ala. v. Garrett*, 531 U.S. 356, 363 (2001); *Edelman v. Jordan*, 415 U.S. 651, 673 (1974); *Ex parte Young*, 209 U.S. 123, 159–60 (1908).

The first two exceptions do not apply here. The Supreme Court has held that Congress did not validly abrogate states' immunity through the ADEA. *Kimel v. Fla. Bd. of Regents*, 528 U.S. 62, 91 (2000). Further, Michael seeks monetary relief for the ADEA violation. The question, then, is whether VCU waived its immunity. By removing a case from state to federal

---

[7] *See Carter*, 591 S.E.2d at 78 (finding University of Virginia a state agency under protection of sovereign immunity); *see also* Va. Code Ann. § 23.1-2300 *et seq.* (creating VCU through Virginia statute).

court, a state defendant waives its right to rely on Eleventh Amendment immunity. *Sansotta v. Town of Nags Head*, 724 F.3d 533, 546 (4th Cir. 2013) (stating the Supreme Court "created a bright line rule: any voluntary removal waives immunity") (citing *Lapides v. Bd. of Regents of the Univ. Sys. of Ga.*, 535 U.S. 613, 621 (2002)). Michael originally filed this action in state court, and VCU removed it to federal court, thus waiving its Eleventh Amendment immunity.

Removal, however, did not waive VCU's broader state sovereign immunity. *See Stewart*, 393 F.3d at 488 (noting that Eleventh Amendment immunity is only "an example of state sovereign immunity as it applies to suits filed in federal court against unconsenting states"); *see also Beaulieu v. Vermont*, 807 F.3d 478, 490 (2d Cir. 2015) ("[W]hile a state defendant's removal waives the state's Eleventh Amendment immunity, it does not waive the state's general sovereign immunity."). Virginia waives its state sovereign immunity only when a statute "has explicitly and expressly announced such a waiver." *Ligon v. Cty. of Goochland*, 689 S.E.2d 666, 669 (Va. 2010). The Court cannot find, nor does Michael cite, any evidence that Virginia has waived its sovereign immunity as to the ADEA. *See Amaram v. Va. State Univ.*, No. 3:06-cv-444, 2006 WL 6198447, at *1 (E.D. Va. Sept. 14, 2006) (finding Virginia did not waive immunity for ADEA claims).

VCU retains its broader state sovereign immunity that protects state agencies from private actions under the ADEA. The Court will therefore dismiss Count XI with prejudice.

### III. CONCLUSION

For these reasons, the Court dismisses Counts VI through X, the VHRA claims, and Count XI, the ADEA claim, with prejudice. The Court dismisses Michael's Title VII claims, Counts I through V, but grants her leave to amend her complaint as to those claims.

The Court will enter an appropriate order.

Let the Clerk send a copy of this Opinion to all counsel of record.

Date: July 31, 2018
Richmond, VA

/s/ John A. Gibney, Jr.
John A. Gibney, Jr.
United States District Judge