IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

AUDREY MICHAEL,
        Plaintiff,

v.                                                         Civil Action No. 3:18-cv-125-JAG

VIRGINIA COMMONWEALTH UNIVERSITY,
        Defendant.

## OPINION

Audrey Michael, a 51-year-old African American woman, began working as a senior compliance and policy analyst for Virginia Commonwealth University ("VCU") in March, 2013. In 2015, Michael's supervisor, Jacqueline Kniska, made several derogatory remarks about African American women during a meeting. Soon after reporting these remarks to a supervisor, Michael received an increased workload, tightened deadlines, and a negative performance evaluation. Michael left her job with VCU on October 27, 2015.

Michael initially brought an eleven-count complaint against VCU that included claims under Title VII of the Civil Rights Act of 1964. VCU moved to dismiss the complaint. The Court granted VCU's motion but gave Michael leave to amend her Title VII claims.

Michael now brings a six-count amended complaint against VCU for Title VII violations and intentional infliction of emotional distress ("IIED"). Because Michael's amended complaint fails to adequately plead Title VII claims, and sovereign immunity bars her IIED claim,[1] the Court will grant VCU's motion to dismiss.

---

[1] The Court gave Michael leave to amend only her Title VII claims, and she did not move for leave to add an IIED claim. In any event, sovereign immunity prevents Michael from suing VCU for IIED.

1

## II. FACTS IN THE AMENDED COMPLAINT

In Michael's first complaint, she cited a July, 2015 meeting in which Kniska called an African American woman's name "so ghetto." (Compl. ¶ 10.) At the same meeting, Kniska asked who was responsible for "hiring these people," referring to two African American women. (*Id.*) Finally, Kniska complained about an African American woman's comment that VCU did not employ enough African Americans. Kniska wondered aloud what would happen if she complained that VCU did not employ enough women. Michael complained to superiors about these comments. After she complained, Kniska assigned Michael extra tasks, found fault in her work, communicated with her almost solely by e-mail, denied her the opportunity to attend a conference, and ignored her request for annual leave. On October 21, 2015, Kniska issued Michael a poor performance evaluation. Michael complained again about her work environment before resigning on October 27. Michael later learned that VCU's system listed her employment as "terminated," rather than "resigned." (Compl. ¶ 32.)

In her amended complaint, Michael alleges several additional pertinent facts. First, not only did Kniska assign Michael additional work, but she also imposed unreasonable deadlines for that work. As a consequence of not meeting the deadlines, Kniska punished Michael with a poor performance review. Kniska did not assign extra work or unreasonable deadlines to any "similarly situated Caucasian employee[s]." (Am. Compl. ¶ 20, 21.)

Michael claims that she "experienced such ongoing harassment that she felt the only way to stop it was to resign," and that VCU "constructively terminated" her. (Am. Compl. ¶ 39, 41.) She also alleges that VCU improperly listed Michael as "terminated," which allowed VCU to deny her continued benefits and delayed her start date at her next job. (Am. Compl. ¶ 46.)

2

Finally, Michael says that she suffers from post-traumatic stress disorder ("PTSD"). Due to her experiences at VCU, she suffered sleeplessness and had to increase her PTSD medication.

The amended complaint alleges six counts: (I) violation of Title VII based on race discrimination; (II) violation of Title VII based on a hostile work environment; (III-V) violations of Title VII based on three retaliation incidents; and (VI) IIED. VCU moved to dismiss all claims.

## II. DISCUSSION[2]

### A. Count I: Race Discrimination

Under Title VII, an employer may not refuse to hire, discharge, or otherwise discriminate against an individual regarding compensation, terms, conditions, or privileges of employment, due to the individual's race, color, religion, sex, or national origin. 42 U.S.C. § 2000e–2(a)(1). Without direct evidence of racial discrimination, a plaintiff alleging race discrimination under Title VII must establish:

> (1) that she was a member of a protected racial, ethnic, or other group; (2) that she experienced an adverse employment action; (3) that at the time of the adverse employment action, she was performing her job at a level that met her employer's legitimate expectations; and (4) that the position remained open or was filled by a similarly qualified applicant outside of the plaintiff's protected class, or that other

---

[2] VCU moves to dismiss pursuant to Rules 12(b)(1) and (12)(b)(6). A motion under Rule 12(b)(1) tests the court's subject matter jurisdiction. The plaintiff bears the burden of proving proper subject matter jurisdiction as the party asserting jurisdiction. *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982). A Rule 12(b)(6) motion gauges the sufficiency of a complaint without resolving any factual discrepancies or testing the merits of the claims. *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992). In considering the motion, a court must accept all allegations in the complaint as true and must draw all reasonable inferences in favor of the plaintiff. *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 253 (4th Cir. 2009) (citing *Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999)). The principle that a court must accept all allegations as true, however, does not apply to legal conclusions. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). To survive a Rule 12(b)(6) motion to dismiss, a complaint must state facts that, when accepted as true, state a claim to relief that is plausible on its face. *Id.* "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)).

3

employees who are not members of the protected class were retained under similar circumstances.

*Ze-Ze v. Kaiser Permanente Mid-Atl. States Regions, Inc.*, 833 F. Supp. 2d 543, 548 (E.D. Va. 2011).

As an African American woman, Michael qualifies as a member of a protected class. *See id.* at 549. Michael, however, fails to allege that she suffered from adverse employment action. This element requires "a discriminatory act which adversely affects the terms, conditions, or benefits of a plaintiff's employment." *James v. Booz-Allen & Hamilton, Inc.*, 368 F.3d 371, 375 (4th Cir. 2004) (internal citation omitted). Disciplinary actions that do not result in the loss of pay or position do not constitute adverse employment action. *See Thompson v. Potomac Elec. Power Co.*, 312 F.3d 645, 651-52 (4th Cir. 2002).

Neither Michael's increased workload nor her poor performance evaluation led to a loss of pay or position.[3] These actions were not "essentially . . . career-ending" or "harbinger[s] of dismissal." *Mveng-Whitted v. Va. State Univ.*, No. 3:11-cv-842, 2012 WL 3686285, at *5 (E.D. Va. Aug. 24, 2012). Moreover, Kniska falsely criticized Michael's performance and denied her request to attend a conference, which do not qualify as adverse employment actions. *See Taylor v. Republic Servs.*, No. 12-cv-523, 2013 WL 487042, at *5-6 (E.D. Va. Feb. 6, 2013) (rejecting discrimination claims based on "fabricated criticisms," "false negative evaluations," and "restricted travel").[4] For these reasons, the Court will dismiss Count I.

---

[3] Michael tries to allege adverse employment action by claiming that VCU constructively discharged her, but her facts do not support this claim. To demonstrate constructive discharge, Michael would have to plead that VCU, motivated by racial bias, deliberately made her working conditions *objectively* intolerable. *Honor v. Booz-Allen & Hamilton, Inc.*, 383 F.3d 180, 186-87 (4th Cir. 2004). Michael's facts do not indicate she can meet this "stringent" intolerability standard. *Nnadozie v. Genesis Healthcare Corp.*, 730 F. App'x 151, 162 (4th Cir. 2018).

[4] Michael also argues that VCU treated her differently from Caucasian employees. To base her discrimination claims on this theory, however, Michael must identify employees "similar in all

## B. Count II: Hostile Work Environment

To plead a hostile work environment claim, a plaintiff must show (1) unwelcome conduct; (2) due to her race; (3) that was "sufficiently severe or pervasive to alter the plaintiff's conditions of employment and to create an abusive work environment;" and (4) that can be imputed to her employer. *Boyer-Liberto v. Fontainebleau Corp.*, 786 F.3d 264, 277 (4th Cir. 2015). To determine if the offending conduct was severe or pervasive, courts consider the totality of the circumstances, including (1) frequency; (2) severity; (3) whether the conduct was physically threatening or humiliating, or merely an offensive utterance; and (4) whether the conduct unreasonably interfered with the plaintiff's work performance. *Clark Cty. Sch. Dist. v. Breeden*, 532 U.S. 268, 270–71 (2001). An offensive epithet, simple teasing, and offhand remarks will not satisfy the test. *Boyer*, 786 F.3d at 277. Unless notably severe, isolated incidents will not suffice. *Id.*

Michael does not allege conduct that meets the severe or pervasive standard. Rather than physically threatening or humiliating Michael, Kniska's comments amounted to "offensive utterance[s]" that did not unreasonably interfere with Michael's performance. *See Clark Cty. Sch. Dist.*, 532 U.S. at 270-71. Moreover, the derogatory comments did not occur on a "continuous daily" basis. *Spriggs v. Diamond Auto Glass*, 242 F.3d 179, 184 (4th Cir. 2001). Although "hostile work environment claims often involve repeated conduct," isolated incidents can meet the standard if they qualify as "extremely serious." *Boyer-Liberto*, 786 F.3d at 277. Here, Kniska's isolated offhand remarks do not reach the level of "extremely serious." *Id.* Accordingly, the Court will dismiss Count II.

---

relevant aspects" to Michael. *Haywood v. Locke*, 387 F. App'x 355, 359 (4th Cir. 2010). She has not done so in her amended complaint.

## C. Counts III-V: Retaliation

A plaintiff alleging retaliation must plead that (1) she engaged in a protected activity; (2) her employer took materially adverse action against her; and (3) the protected activity caused the adverse action. *Strothers v. City of Laurel*, 895 F.3d 317, 327-28 (4th Cir. 2018). Complaining to supervisors about potential Title VII violations can constitute protected activity. *Ingleson v. Burlington Med. Supplies, Inc.*, 141 F. Supp. 3d 579, 584 (E.D. Va. 2015). With regard to the second element, an employer's conduct must be "so materially adverse as to dissuade a reasonable employee from engaging in protected activity." *Hinton v. Va. Union Univ.*, 185 F. Supp. 3d 807, 834 (E.D. Va. 2016). This element creates a lower standard than adverse action requirements in other contexts, but even under the more relaxed standard, reprimands without collateral consequences, snubbing, antipathy, and "petty slights" do not qualify as adverse action. *Id.* at 831-32. Finally, a plaintiff alleging retaliation must show that her protected activity serves as the "but-for" cause of her employer's adverse action. *Ingleson*, 141 F. Supp. 3d at 583.

A negative performance review or a performance improvement plan alone will not constitute materially adverse action. *Emami v. Bolden*, 241 F. Supp. 3d 673, 685 (E.D. Va. 2017). A poor review or performance plan, however, can support an adverse action claim if the employer relies upon it to later take additional action, such as discharging or demoting the employee. *See id.* (holding that placing the plaintiff on a performance improvement plan met the standard because the plan imposed conditions that led to his firing).

Michael engaged in protected activity when she spoke with a supervisor and filed a formal complaint regarding Kniska's comments about African American women. *See Ingleson*, 141 F. Supp. 3d at 584. Michael fails to establish, however, that VCU took materially adverse action against her. Michael's poor performance evaluation, even if Kniska fabricated it, did not

6

precipitate any discharge, demotion, loss of pay, or other collateral consequence. Without something more, the evaluation would not dissuade a reasonable employee from reporting discrimination. *See Emami*, 241 F. Supp. 3d at 685; *see also Wilson v. City of Chesapeake*, 290 F. Supp. 3d 444, 462 (E.D. Va. 2018) (noting that a reprimand alone cannot form the basis of a retaliation claim).

Similarly, an increased workload would not discourage a reasonable employee from engaging in protected activity. *Hughes v. Navy Fed. Credit Union*, No. 1:10-cv-1430, 2012 WL 32404, at *13 (E.D. Va. Jan. 4, 2012). Kniska's critiques and e-mail communication, moreover, resemble the "petty slights[ or] minor annoyances" that Title VII does not prohibit. *Hinton*, 185 F. Supp. 3d at 832. Additionally, Kniska's denial of Michael's request to attend a conference does not meet the standard. *Cf. Wilson*, 290 F. Supp. 3d at 462 (holding that "marginally fewer opportunities" would not "dissuade[] a reasonable worker from making or supporting a charge of discrimination"). Finally, Michael alleges that VCU's database listed her as "terminated" after she resigned, which delayed her start date at her next job.[5] Michael fails to include any facts indicating that VCU coded her differently from its normal practice due to her complaints. In any event, ambiguous post-employment coding would not deter a reasonable employee from reporting discrimination.

Because Michael does not adequately plead the second element of her retaliation claims, the Court will dismiss Counts III-V.

---

[5] Michael also alleges that VCU used her "terminated" status to deny her continued benefits. The Court determined in its prior Opinion that Michael's benefits ended pursuant to the Commonwealth's healthcare plan, which VCU submitted in support of its first motion to dismiss.

7

### D. Count VI: Intentional Infliction of Emotional Distress

The Eleventh Amendment grants sovereign immunity to states and state agents like VCU. *See Rector & Visitors of the Univ. of Va. v. Carter*, 267 Va. 242, 244, 591 S.E.2d 76, 78 (2004) (finding University of Virginia a state agency under protection of sovereign immunity); *see also* Va. Code Ann. § 23.1-2300 (creating VCU through Virginia statute). Although VCU waived its Eleventh Amendment immunity when it removed this case to federal court, *Sansotta v. Town of Nags Head*, 724 F.3d 533, 546 (4th Cir. 2013), VCU did not waive its broader state sovereign immunity. *See Stewart v. North Carolina*, 393 F.3d 484, 488 (4th Cir. 2005) (noting that Eleventh Amendment immunity is only "an example of state sovereign immunity as it applies to suits filed in federal court against unconsenting states"); *see also Beaulieu v. Vermont*, 807 F.3d 478, 490 (2d Cir. 2015) ("[W]hile a state defendant's removal waives the state's Eleventh Amendment immunity, it does not waive the state's general sovereign immunity.").

VCU thus enjoys immunity absent an express statutory or constitutional waiver. *Patten v. Commonwealth*, 262 Va. 654, 658, 553 S.E.2d 517, 519 (2001). While the Virginia Tort Claims Act ("VTCA") provides a limited waiver of sovereign immunity in suits against the Commonwealth, that waiver does not apply to agencies like VCU. *Adkins v. Rectors & Visitors of George Mason Univ.*, No. 1:15-cv-879, 2015 WL 5638102, at *2 (E.D. Va. Sept. 23, 2015). The VTCA does not save Michael's IIED claim, and Michael has cited no other evidence that VCU has waived its sovereign immunity. Accordingly, the Court will dismiss Count VI.

### CONCLUSION

For these reasons, the Court will grant VCU's motion to dismiss the amended complaint. The Court will enter an appropriate Order.

Let the Clerk send a copy of this Opinion to all counsel of record.

Date: 8 January 2018
Richmond, VA

/s/ 
John A. Gibney, Jr.
United States District Judge